IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: |
| v. | : | DATE FILED: |
| HECTOR ARMANDO KELLUM | : | VIOLATION: |
| | | 15 U.S.C. § 1 (conspiracy to |
| | : | restrain trade – 1 count) |

## INFORMATION

### COUNT ONE

The United States of America, acting through its attorneys, charges that:

1. At all times relevant to this Information, Defendant HECTOR ARMANDO KELLUM, a resident of Montgomery County, Pennsylvania, within the Eastern District of Pennsylvania, was employed by Company A. During that time, KELLUM was the Senior Director of Pricing and Contracts and, beginning in approximately November 2013, Vice President of Contracting and Business Analytics. KELLUM was responsible for overseeing pricing and contracts of generic drugs for Company A.

2. During the period covered by this Information, Company A, a corporation with its principal place of business in New Jersey, was engaged, directly or through related entities, in the manufacturing of generic drugs, and the marketing and sale of generic drugs in the United States.

3. Cooperating witness 1 ("CW-1") was employed at Company A as a sales representative.

4. Cooperating witness 2 ("CW-2") was employed at Company A as a pricing and contracts executive, and reported directly to defendant HECTOR ARMANDO KELLUM.

5. During the period covered by this Information, Company B, a corporation with its principal place of business in New York, was engaged, directly or through related entities, in the manufacturing of generic drugs, and the marketing and sale of generic drugs in the United States.

6. Ara Aprahamian was employed at Company B as a senior sales and marketing executive, and was responsible for overseeing generic drug sales, pricing, and contracts.

7. Defendant HECTOR ARMANDO KELLUM, CW-1, and CW-2, acting on behalf of Company A, and Aprahamian, acting on behalf of Company B, were competitors in the marketing and sale of generic drugs in the United States.

8. Various entities and individuals not made defendants in this Information participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

9. Whenever in this Information reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## DESCRIPTION OF THE OFFENSE

10. From at least as early as March 2013 and continuing until at least June 2015, the exact dates being unknown to the United States, in the Eastern District of Pennsylvania and elsewhere, defendant

**HECTOR ARMANDO KELLUM**

and his co-conspirators, including Company A, CW-1, CW-2, Company B, and Aprahamian, knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States. The conspiracy engaged in by the defendant and his co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## MEANS AND METHODS

For the purpose of forming and carrying out the charged conspiracy:

11. Defendant HECTOR ARMANDO KELLUM and his co-conspirators did those things that they conspired to do, including, among other things:

    (a) discussed the allocation of and agreed to allocate customers located in the United States;

    (b) provided and received specific non-public prices paid by allocated customers to the existing supplier;

    (c) communicated about the timing of anticipated price increases;

    (d) discussed and agreed to increase prices for generic drugs;

    (e) provided and received specific non-public prices in connection with agreed-upon price increases;

    (f) implemented price increases in accordance with the agreement reached;

    (g) submitted bids and offers to, and declined requests to submit bids and offers from, customers in accordance with the agreement reached, including at least one customer located in the Eastern District of Pennsylvania; and

  (h)  sold and accepted payment for generic drugs at collusive and noncompetitive prices.

  12.  For example, with respect to certain generic drugs, when Company A or Company B was preparing to launch a generic drug into the other company's market, CW-1 on behalf of Company A and Aprahamian on behalf of Company B discussed what share of the market the launching company wanted to obtain. They also discussed customers the launching company might solicit and customers the current supplier was willing to relinquish. During those conversations, or shortly thereafter, defendant HECTOR ARMANDO KELLUM and his co-conspirators reached an agreement on which customers the launching company would solicit. The purpose of the conversations between defendant KELLUM, his co-conspirators at Company A, and Aprahamian was to allow the launching company to obtain customers quickly at the highest price possible, and minimize the decline of price for the drugs being launched.

  13.  During some of the conversations between CW-1 and Aprahamian, when the drug being discussed was one being launched by Company A, Aprahamian gave CW-1 Company B's dead net price(s) for certain customers. CW-1 usually made contemporaneous notes of CW-1's conversations with Aprahamian and then promptly reported the results of CW-1's conversation to defendant HECTOR ARMANDO KELLUM and/or CW-2 at Company A, including the specific prices Aprahamian disclosed. Company A used the pricing information CW-1 obtained from Aprahamian to solicit the agreed-upon customers that CW-1 discussed with Aprahamian. Aprahamian then authorized Company B to relinquish those customers to Company A by declining to submit a competing bid. As a result, Company A was usually successful in obtaining those customers.

14.     On other occasions, defendant HECTOR ARMANDO KELLUM, co-conspirators at Company A, and Aprahamian agreed to increase prices on certain generic drugs generally in the following manner: When Company B was planning to raise its prices or had recently done so, Aprahamian and CW-1 discussed the amount of the increase, and Aprahamian encouraged Company A also to raise its prices. Aprahamian also asked that Company A not compete for Company B's customers, particularly during the period before Company A raised its prices. On occasion, Aprahamian provided CW-1 with Company B's non-public prices for various classes of trade. CW-1 usually made notes of CW-1's conversations with Aprahamian about price increases. CW-1 promptly reported the substance of CW-1's conversations to defendant KELLUM and/or CW-2, including any specific prices provided by Aprahamian. After the discussions, Company A usually followed Company B's price increase and, during the period before it did so, declined requests for bids from Company B's customers. The purpose of the communications between and among Aprahamian and co-conspirators at Company A was to ensure that the new, higher prices were implemented and maintained, as much as possible, at the level discussed, and to limit the ability of customers to switch suppliers.

15.     For example, beginning in or around May 2014, Aprahamian spoke with CW-1 about a price increase for multiple formulations and sizes of clobetasol, as well as price increases for two other drugs. For many of the formulations and sizes of clobetasol, Company B's proposed WAC price increase was in excess of 1000%. Aprahamian gave to CW-1, and CW-1 contemporaneously recorded, more than seventy of Company B's new dead net prices for various formulations of those three drugs, by class of trade. CW-1 relayed the substance of CW-1's conversations with Aprahamian to co-conspirators at Company A, including defendant HECTOR ARMANDO KELLUM. At defendant KELLUM's request, CW-1 later confirmed

with Aprahamian that the prices CW-1 had recorded were accurate. Defendant KELLUM then used the exact clobetasol prices Aprahamian provided CW-1 to obtain internal approval to increase Company A's prices and to set Company A's new price levels for clobetasol at or around the same price levels as Company B. In addition, defendant KELLUM instructed Company A employees not to compete for Company B's clobetasol customers.

16. Company A and Company B continued to receive and accept payments, including from within the Eastern District of Pennsylvania, for generic drugs affected by the conduct described in this count at collusive and noncompetitive prices through at least in or around June 2015.

## TRADE AND COMMERCE

17. During the period covered by this Information, Company A and Company B sold substantial quantities of generic drugs affected by the conspiracy charged in this Information to customers located in various states in the United States. In addition, payments from affected customers that purchased drugs sold by Company A and Company B traveled in interstate trade and commerce.

18. During the period covered by this Information, the activities of defendant HECTOR ARMANDO KELLUM and his co-conspirators with respect to the sale of affected generic drugs were within the flow of, and substantially affected, interstate trade and commerce.

All in violation of Title 15, United States Code, Section 1.

Dated:

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
RICHARD A. POWERS
Deputy Assistant Attorney General

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

_____
RYAN DANKS
Chief, Washington Criminal I

Antitrust Division
United States Department of Justice

_____
EMMA M. BURNHAM
Assistant Chief, Washington Criminal I

_____
WILLIAM M. MCSWAIN
United States Attorney for the
Eastern District of Pennsylvania

_____
LAUREN M. ELFNER
MATTHEW TANNENBAUM
JOHN W. ELIAS
REBECCA MEIKLEJOHN
KRISTINA SRICA
Trial Attorneys
Antitrust Division
United States Department of Justice
(202) 598-2906